The **TORRINGTON COMPANY**
v.
The **UNITED STATES.**
No. 147–52.

United States Court of Claims.
March 6, 1957.

Samuel S. Dennis 3d., Boston, Mass., for plaintiff. Hale & Dorr, Boston, Mass., were on the briefs.

Rufus E. Stetson, Jr., Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., for defendant. Andrew F. Oehmann and H. S. Fessenden, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiff, a Maine corporation, seeks to recover a refund of income and excess profits taxes paid for the fiscal year ended June 30, 1942. The sole issue to be decided by this court is whether, under § 127 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 127, the amount of a war loss must be deducted from a taxpayer's income from sources

without the United States for the purpose of determining the limit on the credit against United States taxes for taxes paid or accrued to a foreign country imposed by §§ 131(b) (2) and 729 (d) (2) of the Code, 26 U.S.C.A. § 131 (b) (2), 26 U.S.C.A. Excess Profits Taxes, § 729(d) (2).

During the fiscal year ended June 30, 1942, plaintiff was the owner of all the capital stock of subsidiary corporations in Canada, England and Germany. Upon the outbreak of war between the United States and Germany plaintiff's German subsidiary, together with all its assets, was seized by the German Government. As a result of this seizure it is undisputed that plaintiff was deemed to have suffered a war loss in the amount of $46,568.83 for the fiscal year 1942 under the provisions of § 127. During the same fiscal year 1942, plaintiff realized income from dividends on its capital stock in its English and Canadian subsidiaries. Plaintiff claimed and received credit against its United States taxes a portion of the amount of the foreign taxes considered withheld on the dividends received from its English and Canadian subsidiaries. It is the computation of the limit on the foreign tax credit to which plaintiff is entitled that is now in issue.

In preparing its income and excess profits tax returns for the fiscal year 1942, plaintiff elected to compute its foreign tax credits with respect to the income and surtax under the provisions of § 131. Section 729(a) made the provisions of § 131 also applicable to the excess profits tax imposed by Subchapter E of Chapter 2, Internal Revenue Code of 1939. Section 131(b) (2), as amended by § 216(b), Revenue Act of 1939, 53 Stat. 876, provided the following limitation on the foreign tax credit allowable under § 131:

"(2) The total amount of the credit shall not exceed the same proportion of the tax against which such credit is taken, which the taxpayer's net income from sources without the United States bears to his entire net income, in the case of a taxpayer other than a corporation, or to the normal-tax net income, in the case of a corporation, for the same taxable year."

A similar limitation was placed on the allowable foreign tax credit against excess profits taxes by § 729(d) (2). Since the same method of computing the limit on foreign tax credits provided by § 131(b) (2) is applicable to § 729 (d) (2), we will confine most of our discussion to § 131(b) (2).

In arriving at net income from sources without the United States plaintiff did not deduct from its foreign gross income the amount of the § 127 war loss. This resulted in a higher net income from foreign sources and a corresponding increase in the amount of total credit available under the formula provided for in § 131(b) (2), since the proportion of foreign net income to total net income would be higher. It is not specifically stated in the record that plaintiff deducted the § 127 war loss from its gross income from all sources to arrive at total net income, but it is apparent that this was in fact done.

Subsequent to the filing of its income and excess profits tax return for the fiscal year 1942, the Commissioner of Internal Revenue conducted an audit of the plaintiff's tax return for that year. Pursuant to this audit, the Commissioner issued a notice of deficiency which contained various adjustments, one of which was a recomputation of the limit on the total foreign tax credit available to the plaintiff. The Commissioner determined that plaintiff, in computing its net income from sources without the United States, for the purpose of the foreign tax credits and limitations thereon, must deduct from gross foreign income the amount of the § 127 war loss. This action of the Commissioner reduced the available foreign tax credit against the excess profits tax by $11,481.74 and the foreign tax credit against the income and surtax by $10,931.69. These amounts, together with the statutory interest due on deficiencies, were paid or

satisfied by the plaintiff and it now seeks a refund. Therefore, the only issue for decision by this court is whether the Commissioner was correct in deducting from plaintiff's income from sources without the United States the $46,568.-83 representing the § 127 war loss. We think that the Commissioner was correct for the reasons stated hereinafter.

Section 119(d) of the Internal Revenue Code, 26 U.S.C.A. § 119(d), which defines what is to be considered as net income from sources without the United States, reads as follows:

"(d) *Net income from sources without United States*. From the items of gross income specified in subsection (c) of this section [1] there shall be deducted the expenses, losses, and other deductions properly apportioned or allocated thereto, and a ratable part of any expenses, losses, or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be treated in full as net income from sources without the United States."

It is apparent from a reading of this subsection that if we hold a § 127 war loss is a loss within the meaning of § 119(d) it must be deducted from gross income from sources without the United States in order to arrive at the correct net income from such sources. Plaintiff argues that § 127 war losses were not intended to be deducted from gross income without the United States for the purposes of determining the net income pursuant to § 119(d). It premises its argument on the fact that § 119(d) was enacted first in 1921, long before the war-loss section and as such could not have been intended to include such losses. Plaintiff also states that because § 119(d) requires that its losses be properly apportioned or allocated, or a ratable part of losses which can not definitely be allocated to some class of income be deducted from income earned

without the United States, then only those losses arising from operations that normally produce income are cognizable by the statute. Therefore, plaintiff contends, a war loss, not being a loss arising out of an operation calculated to produce income, should not be deductible.

We do not think that plaintiff is correct in these contentions. In enacting the war-loss section Congress had before it all of the provisions of the Internal Revenue Code and could have very easily provided that a § 127 war loss would not be considered a loss under § 119(d). That it failed to do so seems to us to manifest a clear intent that war losses were not to be distinguished from the other losses that were to be taken as deductions in order to arrive at the net income from sources without the United States. Even more persuasive is the fact that § 127 states:

"§ 127 *War losses*

"(a) *Cases in which loss deemed sustained, and time deemed sustained*. For the purposes of this chapter— * * * "

The clear and unambiguous meaning of the words, "For the purposes of this chapter" is that for *all* purposes of the chapter, unless otherwise restricted, a war loss shall be accorded the same treatment as any other loss. Section 119 (d) being a subsection of the same chapter of the Code as § 127, the losses contemplated by § 119(d) must necessarily include a war loss under § 127. Further, we do not feel that § 119(d) losses are restricted to losses from the kind of operations which normally produce income, or cause losses, as contended by plaintiff. Losses for the purposes of taxation have included many kinds and types of business and personal reverses. It requires no stretch of legal contemplation to include losses arising from the seizure of business property by a foreign belligerent. This might well be termed a loss due to the risk of doing business in a foreign country and which

---

1. Subsection (c) defines what items are to be considered as gross income from sources without the United States.

was calculated to produce income. This seems little different from any other business venture that may or may not have profitable results.

Plaintiff further contends that § 127 was intended as a relief statute and that to hold, as we do, that war losses must be deducted under § 119(d), would greatly diminish the relief intended by Congress. Plaintiff says this is true because of the fact that a reduction in net income from sources without the United States, in the amount of the $46,568.83 war loss, reduces its total allowable credit under §§ 131(b) (2) and 729(d) (2) by $22,413.88, which is between 45 and 50 percent of the war loss itself. If the total United States income and excess profits taxes for the year involved were 45 percent of total corporation income then plaintiff would have actually been penalized by deducting the § 127 war loss under § 119(d) since the reduction in tax credit would be higher than the current United States taxes on the amount to be excluded from income from sources without the United States. The fallacy in this argument is apparent when we realize that § 127 was added to the Revenue Code in 1942, well after the extremely high war profits taxes were enacted and the ·result suggested by plaintiff was unlikely to occur. Plaintiff did in fact receive a benefit by being able to write off as a loss against income from all sources the value of its German subsidiary. The fact that it had to also deduct that same loss from its total foreign gross income may have reduced some of the benefit plaintiff would have liked to receive is not of such persuasive weight as to require that we incorporate into § 119(d) a meaning not apparent from a reading of the clear and unambiguous wording of the statute. It is also true that in the case of recoveries of war losses there is no provision in § 119(c) [defining gross income from sources without the United States] for including the amount of such recoveries in the foreign gross income, while § 127 specifically requires that they be included in .gross income from all sources.

This court said recently in E. I. DuPont De Nemours & Co. v. United States, Ct. Cl., 147 F.Supp. 486, 492, "the courts cannot rewrite the statutes to the advantage of the Government." This principle is equally applicable in the case of a taxpayer.

 Section 119(d) requires us to hold that war losses under § 127 must be deducted from gross income from sources without the United States in arriving at the correct net income from such sources. The Commissioner was correct in deducting such loss in computing the limit on the total foreign tax credit allowable to plaintiff under §§ 131 (b) (2) and 729(d) (2). Plaintiff's petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.